DENNIS R. BAGNERIS, SR., Judge.
It This matter arises out of the execution of a License Agreement between Camellia Grill Holdings, Inc. (“Camellia Grill”), as licensor, and The Grill Holdings, L.L.C. (“Grill Holdings”,) as licensee. Grill Holdings appeals a trial court judgment, which granted Camellia Grill’s motion for summary judgment and declared “the License Agreement entered into between the parties on August 27, 2006 to be terminated effective May 25, 2012, restoring all rights to the licenses marks to the mover, CAMELLIA GRILL HOLDINGS, INC.” Camellia Grill also appealed arguing that the trial court erred in determining that May 25, 2012, was the effective date of the termination of the parties’ agreement and that June 1, 2011 should be the effective date of termination. Camellia Grill also filed an answer to Grill Holdings’ appeal requesting additional attorney’s fees for the work done on the appeal. For the following reasons, we hereby affirm the trial court’s judgment granting summary judgment in favor of Camellia Grill, we reverse that part of the judgment that determined the effective date of termination of the License Agreement to be May 25, 2012, and we amend the judgment to find that the | ¡¡effective date of termination of the License Agreement was June 1, 2011, and to include additional attorney’s fees of $3,222.00 for Camellia Grill’s work on this appeal.
FACTS
On June 6, 2011, Camellia Grill filed a petition for declaratory judgment seeking a judicial determination that a License Agreement it had with Grill Holdings had been breached [1]. Specifically, Camellia Grill alleged the following in its petition and first amended and supplemental petition:
1. The defendant altered the marks subject to the Agreement without first obtaining the written consent of plaintiff, as licensor, and has continued to do so despite written notice from plaintiffilicensor to cease the unauthorized use of the altered marks.
2. The defendant has allowed the improper and unauthorized use of the mark, in violation of Sections 6, 7, 10.3 & 11, by the operation of two units, as sub-licensees, in Destín, Florida and on Chartres Street in New Orleans, without first providing written notice of the sub-license to plaintiff/licensor regarding Chartres Street location as well as not having in place proper sub-license agreements for either location upon commencement of operations.
3. The defendant failed to send to plaintiff/licensor the royalty check due for the fourth quarter, 2008, having been due on or before January 10, 2009, in violation of Sections 4.2 & 4.8 of the Agreement.
4. The defendant failed to timely provide the annual financial statement due for 2007, and failed to comply with plaintiffs request for an audit authorized by Sec. 4.8.4 of the Agreement, until it was judicially required to do so by Judgments rendered January 22, 2009, October 2, 2009 and submitted to the mandated audit, only after being held in Contempt of Court by a Judgment rendered |aDecember 29, 2010, Civil District Court, Parish of Orleans Proceedings No. 2008-8236.
On June 24, 2011, Grill Holdings filed an answer that made a general denial and *297 argued that there had been no ill practice nor breach of the License Agreement between the parties. Thereafter, on February 24, 2012, Camellia Grill filed a motion for summary judgment requesting that the License Agreement be terminated retroactively to May 31, 2011, and requested attorney’s fees and costs. In support of its motion for summary judgment, Camellia Grill attached the following exhibits: (1) a copy of the License Agreement; (2) a copy of all the licensed marks; (3) photographs depicting the use of “altered marks” by Grill Holdings; (4) Grill Holdings’ answers to all interrogatories; (5) Grill Holdings’ responses to request for admissions of fact; (6) an April 15, 2008 letter to Grill Holdings putting them on written notice of defaults and requesting that the defaults be cured within fifteen days; (7) a copy of the sublicense agreement between Grill Holdings and Uptown Grill of Destín, L.L.C. executed on May 7, 2009; (8) correspondence from Camellia Grill to Grill Holding, dated April 22, 2009 and May 14, 2009, regarding Grill Holdings’ defaults of the License Agreement; (9) a copy of the sublicense agreement between Grill Holdings and Chartres Grill, L.L.C. executed on January 18, 2011; and (10) a copy of a novelty royalty check in the amount of $197.73 that was never negotiated.
In opposition to the motion for summary judgment, Grill Holdings argues that “the parties tacitly modified the License Agreement when CGH [Camellia Grill] began routinely accepting royalty payments for the years 2007, 2008, 2009, 2010, and half of 2011, including a $75,000 cheek on October 8, 2009 for the opening of a new restaurant unit in Destín, Florida.” Grill Holdings argues that |4 Camellia Grill’s allegations of violations are made in bad faith and that the purported violations of the contract are minor technicalities that do not rise to the level of a material breach. Further, Grill Holdings opposed the motion for summary judgment arguing that it is entitled to have its day in court to prove its affirmative defenses of waiver, estoppel, acquiescence, modification of the contract, accord and satisfaction, payment, and ratification. In support of its opposition to summary judgment, Grill Holdings attached as exhibits: (1) a copy of Camellia Grill’s complaint and amended complaint filed in Mississippi, which Camellia Grill dismissed without prejudice; (2) various correspondence between Camellia Grill and Grill Holdings regarding the License Agreement, the trademarks, service marks and the “altered marks,” and the alleged defaults; (3) the deposition of Michael Shwartz; (4) an amended affidavit of Michael Shwartz; (5) a copy of the trademarked logos and dates of renewal; (6) Grill Holdings’ answers to interrogatories, request for production and requests for admission; and (7) an affidavit of Kathie Houte, Grill Holdings’ bookkeeper.
In its reply to the opposition to motion for summary judgment, Camellia Grill argues that the License Agreement is clear and unambiguous and that Grill Holdings failed to provide credible evidence of any factual dispute which would require a trial. Thereafter, Grill Holdings filed a supplement to its opposition to motion for summary judgment and attached as exhibits (1) the May 22, 2012 affidavit of Hichan Khord, and (2) the September 14, 2011 affidavit of Mark Stein.
After a hearing on May 25, 2012, the trial court granted Camellia Grill’s motion for summary judgment, which terminated the License Agreement, effective May 25, 2012, and granted reasonable attorney’s fees, to be determined at a later date, pursuant to the License Agreement.
|5On July 27, 2012, Grill Holdings filed a motion for new trial, which the trial court denied on August 1, 2012. Thereafter, on *298 September 21, 2012, the trial court granted Camellia Grill’s motion for attorney’s fees and costs and awarded it $160,176.84[2]. Grill Holdings now appeals this final judgment.
DISCUSSION
Before addressing the merits of the appeal, we will address Grill Holdings’ argument that the trial court abused its discretion in denying its motion for new trial. The applicable standard of review in ruling on a motion for new trial is whether the trial court abused its discretion. Guillory v. Lee, 2009-0075, p. 38 (La.6/26/09), 16 So.3d 1104, 1131. A party seeking a new trial on the basis of newly discovered evidence must demonstrate that it has done all that is reasonable to lead to timely discovery of the evidence. McGhee v. Wallace Drennan, Inc., 2004-0950, p. 10 (La.App. 4 Cir. 4/20/05), 904 So.2d 3, 9, citing Barker v. Rust Engineering Co., 428 So.2d 391 (La.1983). Newly discovered evidence justifies a new trial only if evidence: (1) is discovered after trial; (2) could not, with due diligence, have been discovered before or during the trial; and (3) is not merely cumulative, but instead would tend to change the result of the case. Turner v. Dameron-Pierson Co., Ltd., 95-0143, p. 2 (La.App. 4 Cir. 11/16/95), 664 So.2d 739, 740.
After reviewing the motion for new trial, along with the exhibits, we find no abuse of the trial court’s discretion in denying Grill Holdings’ motion for new trial. Grill Holdings has not demonstrated that any of the new evidence submitted with the motion for new trial could not have been discovered prior to the hearing and/or | fithat the new evidence would have changed the trial court’s finding that Grill Holdings breached the written License Agreement.
On appeal, Grill Holdings argues that the trial court erred in granting Camellia Grill’s motion for summary judgment. Specifically, Grill Holdings argues that: (1) Camellia Grill failed to perform its contractual obligations in good faith; (2) there are genuine issue of material fact as to whether it [Grill Holding] substantially performed the contract; (3) paragraph three of the contract is ambiguous and requires the court to look beyond the contract to determine the parties’ intent; (4) it [Grill Holdings] is entitled to prove its affirmative defenses of waiver, acquiescence, modification, ratification, and payment; (5) two of the breaches alleged by Camellia Grill [for failure to timely notify of sub-licensees and failure to pay the fourth quarter of 2008 royalty payment of $197.73] are not genuine breaches; (6) Camellia Grill should be estopped from the termination of the contract since Camellia Grill allowed it to make a substantial investment and open two additional Camellia Grills; (7) this case is appropriate for the court to apply the doctrine of judicial control; and (8) the trial court erred in awarding attorney’s fees.
Appellate courts review the grant or denial of a motion for summary judgment de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, p. 7 (La.2/29/00), 755 So.2d 226, 230. A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is enti- *299 tied to judgment as a matter of law. La. C.C.P. art. 966(B). A fact is material when its existence or 17nonexistence may be essential to the plaintiffs cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Id.
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). Summary judgments are favored, and the summary judgment procedure shall be construed to accomplish those ends. Id. La. C.C.P. art. 966(C)(2) provides that where, as in the instant case, the party moving for summary judgment will not bear the burden of proof at trial, their burden does not require them to negate all essential elements of the adverse party’s claim, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim. Thereafter, if the adverse party fails to produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial, there is no genuine issue of material fact, and the movant is entitled to summary judgment as a matter of law.
According to La. C.C. art. 2045, “[ijnter-pretation of a contract is the determination of the common intent of the parties.” When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art. 2046. Each provision in a contract must be interpreted in light of the other provisions. La. C.C. art. 2050. |sIn the event of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. La. C.C. art. 2056.
The License Agreement, signed on August 27, 2006, by Camellia Grill, the li-censor, and Grill Holdings, the licensee, provides in pertinent part:
1. RECITALS.
1.1 Licensor owns the intellectual property, trademarks and service marks (“Marks”)....
1.2 Licensee desires to obtain the exclusive license to the Marks for the purposes set forth herein.
1.3 The Parties enter into this Agreement to state the terms and conditions upon which Licensee may open, operate, franchise and/or subli-cense restaurants bearing the Marks and to sell ancillary products bearing the Marks.
2. TERM AND TERMINATION. This Agreement shall commence as of the date first set forth above and shall continue until December 31, 2157, unless sooner terminated as set forth below.
2.1 Termination will be effective immediately upon written notice from Licensor to Licensee when Licensee: (i) fails to comply with any provision of this Agreement, or (ii) becomes insolvent, files for bankruptcy or dissolves. (Emphasis added)
2.2 Licensee may terminate this Agreement upon one (1) year’s written notice to Licensor provided that (i) Licensee is not in default hereunder, (ii) Licensor shall not owe Licensee any rebate, refund, return or repayment of any amounts paid hereunder, (iii) Licensee immediately sur *300 renders all right whatsoever Licensee may have in the- Marks and assigns all franchise or sublicense agreements then in effect to Licensor, and (iv) Sections 4, 5, 12 and 14 shall survive such termination.
3. CAMELLIA GRILL TRADEMARK LICENSE. Licensor grants to the Licensee for the duration of this Agreement an exclusive license to use the Marks in connection with Licensee’s restaurant operations and the marketing and distribution of t-shirts, aprons, sweatshirts, caps, mugs, cups, posters, coffee, golf shirts, and dress shirts bearing the Marks within the United States (the “Territory”). Licensee agrees not to change any aspect of the Marks in color, design or presentation, without the prior written consent of Licensor. Licensee may sub-sublicense the Marks, provided that all sublicensees agree in writing that the Marks shall be used only as specified in this Agreement. Licensee shall submit all products bearing the Marks in advance to Licensor prior to marketing them to |9enable Licensor to approve the quality of the goods, which approval will not unreasonably be refused and shall be communicated by Licensor within 30 days of submission by Licensee of goods of appropriate quality. From time to time, Licensor may visit the restaurants and sample the food items on the menu and observe the provision of services by Licensee, franchisees and/or sublicensees; as a result of such a visit, Licensor may request Licensee to alter menu items or alter its services, but Licensor shall not make such request unreasonably.
$ $ $
5. OWNERSHIP. Licensee acknowledges and agrees that all of the Li-censor’s right, title and interest in and to the Marks shall remain the property of Licensor. Where appropriate, Licensee agrees to use the designations m, ® or © with respect to its use of the Marks.
6. USE OF TRADEMARKS. Licensee will: (i) use the Marks only as set forth herein; (ii) refrain from use of the Marks except under the terms of this Agreement; (iii) notify Licensor in writing of any conflicting uses, applications for registration or registrations of the Mark or Marks similar thereto of which it has actual knowledge; and (iv) execute any documentation requested by Licensor relating to the Marks.
6.1 Licensee shall not use any part of the Marks in combination with any other trademark, word, symbol, letter or design. Licensee shall not use any of the Marks as a part of its company name, but Licensee shall use “Camel-ha Grill” as the name of each of its restaurants in which the marks are used. Licensee agrees not to adopt any trademark, tradename, design, logo or symbol, which, is similar to or likely to be confused with any of the Marks.
6.2 Licensor makes no representation or warranty as to the viability of Licensee’s operation nor as to the marketability of the Marks or of products or restaurants bearing the Marks. Licensor will not be liable for any actions or claims by third parties, or any expenses, costs or damages related thereto or resulting therefrom, arising in connection with Licensee’s use of the Marks.
6.3 Licensee shall provide to Li-censor a copy of any franchise agreement, license, sub-license or any other agreement with respect to the use, transfer, assignment, franchise, or alienation of all or any of the Marks *301 within two (2) business days of the execution of any such agreement.
6.4 Licensee shall cause any franchisee, licensee, transferee, assignee or sublicense of any or all of the Marks to abide by all of the provisions of this Agreement, and in particular, with the provisions of Articles 4, 5 and 6.
[[Image here]]
Jail. SUBLICENSING. Licensee may sublicense the Marks to any third party upon prior written notice to Li-censor. Licensor may assign this Agreement without the prior approval of Licensee.
12. EFFECT OF TERMINATION.
12.1 Licensee to Prevent Consumer Confusion. Upon termination of this Agreement, Licensee shall avoid any action or the continuance of any condition which might suggest to the public that Licensee has any right to the Marks, or that Licensee continues to be associated with Licensor.
12.2 Effect of Termination. Upon termination of this Agreement for any reason, all rights and privileges granted to Licensee hereunder will immediately cease and will revert to Li-censor. Licensee will discontinue use of all Marks.
⅜ ⅜ ⅜
16. DEFAULT. Licensor may, in its sole discretion, terminate all or part of this Agreement in the event that:
16.1 If Licensee at any time after January 1, 2007 fails to continue active marketing of the Marks and fails to cure such default within fifteen (15) days after written notice from Li-censor. For purposes hereof, maintaining restaurant operations at normal times during normal business hours, except for holidays, acts of God, governmental action, terrorism and other events of force majeure shall constitute “active marketing.”
* ⅜ *
16.3Licensee defaults under any of its obligations hereunder and fails to cure such default within fifteen (15) days after written notice from Licensor. (Emphasis added)
17. MISCELLANEOUS.
17.1 Amendment. This Agreement may not be amended, modified or supplemented except by a written agreement executed by all the Parties.
17.2 Attorneys’ Fees. In the event any Party hereto institutes an action or proceeding to enforce any rights arising under this Agreement, the Party prevailing in such action or proceeding shall be paid all reasonable attorney’ fees and costs. These costs include, without limitation, expert witness fees, investigation costs, costs of tests and analysis, travel and accommodation ^expenses, deposition and trial transcript costs and court costs. A court, and not a jury, will set all such fees and costs, all of which will be included in the judgment entered in such proceeding.
After reviewing the record, as well as Grill Holdings’ arguments on appeal, we find no error in the trial court’s judgment, which granted Camellia Grill’s motion for summary judgment. The record is devoid of any evidence that Camellia Grill acted in bad faith in its dealings with Grill Holdings; rather, we find that Camellia Grill provided many opportunities for Grill Holdings to cure the defaults before taking legal action. We also agree with Camellia Grill that section 3 of the License Agreement [3] is not ambiguous and that it clearly *302 prohibits any change in the marks without the prior written consent of the Licensor [Camellia Grill]. The License Agreement is also very clear in section 16.3 when it authorizes Camellia Grill to terminate the License Agreement in the event that “licensee defaults under any of its obligations hereunder and fails to cure such default within fifteen (15) days after written notice from Licensor.” (Emphasis added). Thus, the arguments made by Grill Holdings that the breaches were not “genuine” and/or that Grill Holdings had substantially performed the contract in good faith are irrelevant and have no merit. Further, not only did Grill Holdings fail to support any of its alleged affirmative defenses of waiver, acquiescence, modification of the contract, ratification, and payment, but the License Agreement clearly provides in section 17.1 that the License Agreement “may not be amended, modified or supplemented except by a written agreement executed by all the Parties.” Because we find that the License Agreement is clear and explicit and thus should not be | ^subject to any further interpretation by the court, and because Grill Holdings was in default of the License Agreement and failed to cure the breaches within the periods set forth in the agreement, we find that the trial court properly granted Camellia Grill’s motion for summary judgment.
Additionally, we find no error in the trial court judgment awarding attorney’s fees at a later date (judgment signed on October 9, 2012) since the July 19, 2012 judgment granted “reasonable attorney’s fees and all costs of these proceedings pursuant to Section 17.2 of the License Agreement, with the amounts to be determined by further proceedings herein.” As stated by the trial court in her reasons for judgment regarding the attorney’s fees, “[a]s the prevailing party in the audit dispute and the summary judgment, Camellia Grill is entitled to attorney’s fees and costs incurred. Camellia Grill has provided the Court with evidence supporting the attorney’s fees and costs associated with the litigation.” The License Agreement clearly provides for an award of attorney’s fees under section 17.2, which states:
17.2 Attorneys’ Fees. In the event any Party hereto institutes an action or proceeding to enforce any rights arising under this Agreement, the Party prevailing in such action or proceeding shall be paid all reasonable attorney’ fees and costs. These costs include, without limitation, expert witness fees, investigation costs, costs of tests and analysis, travel and accommodation expenses, deposition and trial transcript costs and court costs. A court, and not a jury, will set all such fees and costs, all of which will be included in the judgment entered in such proceeding.
After reviewing the record, we find that the attorney’s fees are supported by the record and are reasonable.
Camellia Grill answered the appeal for the purpose of seeking additional attorney’s fees incurred in this appeal. Although Grill Holdings filed a motion to strike the answer, we find no merit in this motion as this Court, on March 8, 2013, 11sallowed the filing of both the late request for oral argument filed by Grill Holdings and the late request to file an answer by Camellia Grill. Further, this Court has authority to make such an award pursuant to La. C.C.P. art. 2164 and may “render any judgment which is just, legal, and proper upon the record on appeal.” Accordingly, we hereby amend the judgment to include additional attorney’s fees in *303 curred in this appeal in the amount of $3,222.00.
Camellia Grill also appealed the July 19, 2012 judgment but only insofar as the trial court’s determination of the effective date of termination being May 25, 2012, rather than the date prayed for in the petition, June 1, 2011. Camellia Grill argues that the License Agreement is controlling and that according to section 2.1, termination became effective immediately upon the issuance of written notice on May 81, 2011. We agree.
2.1 Termination will be effective immediately upon written notice from Li-censor to Licensee when Licensee: (i) fails to comply with any provision of this Agreement, or (ii) becomes insolvent, files for bankruptcy or dissolves.
Camellia Grill issued written notice to Grill Holdings on May 31, 2011, “terminating the License ... effective immediately for Grill’s failure to comply with four critical provisions of the License.” Specifically, Camellia Grill listed two defaults which remained uncured on that date: (1) Grill Holdings was using “an altered version of the fork/flower logo Mark” and (2) Grill Holdings failed to send a 2008 Royalty check which was originally due by January 10, 2009. The License Agreement is clear and explicit that termination is effective immediately upon written notice from the Licensor [Camellia Grill] to Licensee [Grill Holdings] when Licensee “fails to comply with any provision of this Agreement.” Thus, it was clearly erroneous for the trial court to find that the effective date of | ^termination was May 25, 2012, that being the date of the hearing on the Motion for Summary Judgment, rather than the contractually agreed upon date as set forth in the License Agreement. Accordingly, we hereby reverse that part of the trial court judgment and amend the judgment to find the effective date of termination was June 1, 2011.
For these reasons, we hereby affirm the trial court’s judgment granting summary judgment in favor of Camellia Grill, we reverse that part of the judgment that determined the effective date of termination of the License Agreement to be May 25, 2012, and we amend the judgment to find that the effective date of termination of the License Agreement was June 1, 2011, and to include additional attorney’s fees of $3,222.00 for Camellia Grill’s work on this appeal.
AFFIRMED IN PART; REVERSED IN PART; AMENDED; MOTION TO STRIKE ANSWER DENIED.

. A motion to transfer and consolidate the new petition with a previously filed pleading [No. 2008-8236] was filed on July 7, 2011, and granted on September 9, 2011.

. The hearing on the rule to fix attorney's fees was held before Honorable Nadine Ramsey, sitting ad hoc for Judge Giarrusso.

. Section 3 provides, in pertinent part: "Licensee agrees not to change any aspect of the *302 Marks in color, design or presentation, without the prior written consent of Licensor."