BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS

\* NO. 2019-CA-0624

VERSUS

\* COURT OF APPEAL

\* FOURTH CIRCUIT

PILKO & ASSOCIATES, INC., BEST WALL AND GEORGIA PACIFIC CORPORATION

\* STATE OF LOUISIANA

\* \* \* \* \* \* \*

CONSOLIDATED WITH:

CONSOLIDATED WITH:

BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS

NO. 2019-CA-0625

VERSUS

BOLLINGER GULF REPAIR, LLC, BOLLINGER SHIPYARDS, INC., AMERICAN MARINE CORPORATION, TEMPORARY MARINE COMPANY, BARGE OWNERS 1,2, AND 3, KEASBEY & MATTISON COMPANY, AND INSURANCE COMPANIES AB, CD, EF, GH, IJ, KL, MN, OP, QR, ST, UV, AND WX

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2002-06068, DIVISION "L"
Honorable Kern A. Reese, Judge
\* \* \* \* \* \*
**JAMES F. MCKAY III**
**CHIEF JUDGE**
\* \* \* \* \* \*

(Court composed of Chief Judge James F. McKay III, Judge Terri F. Love, Judge Dale N. Atkins)

ROBERT B. MCNEAL
CHERRELL S. TAPLIN
TRINITY BROWN
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
        COUNSEL FOR PLAINTIFF/APPELLANT

ROBERT S. REICH
MARVA JO WYATT
REICH ALBUM & PLUNKETT, L.L.C.
3850 North Causeway Boulevard
Two Lakeway Center, Suite 1000
Metairie, Louisiana 70002
     COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**

**FEBRUARY 12, 2020**

In this case, involving a dispute between a lessor and lessee, the plaintiff,

Board of Commissioners of the Port of New Orleans ("Port"), appeals the district

court's granting of summary judgment in favor of the defendants, Bollinger Gulf

Repair, L.L.C. and Bollinger Shipyards, Inc. (collectively, "Bollinger") and the

denial of its motion for a new trial. For the reasons that follow, we affirm.

**FACTUAL BACKGROUND**

On February 9, 1962, the Port leased a tract of land (tract I) located on the

Industrial Canal in New Orleans East to American Marine Corporation ("AMC")

for use as a shipyard and marine repair business. On May 1, 1964, the Port leased

an adjoining tract of land (tract II) to AMC for the same purpose. The properties

had been owned by the Port since 1918 and were used by the United States Navy

until 1946. As circumstances dictated, the Port and AMC entered into

supplemental and amended leases that altered the tract I lease on October 4, 1967,

and the tract II lease on January 31, 1968.

AMC entered bankruptcy on September 15, 1993. The Port then commissioned Pilko & Associates, Inc. to conduct phase I and phase II environmental audits of the leaseholds. These reports found only minor issues with hydrocarbon stained soil and possible lead contamination. No asbestos or sunken barges were discovered by Pilko. When the Port began soliciting for a new lease, it represented that these two issues (hydrocarbon stained soil and potential lead contamination) were the only things that might put a potential lessee in default.

On July 20, 1995, AMC and Trinity Gulf Repair, Inc. ("TGR") entered into an assignment and assumption of leases, which assigned the tract I and tract II leases, as supplemented and amended, from AMC to TGR. This assignment included "all legal warranties and with full substitution and subrogation in and to all rights of action in warranty . . ."

Contemporaneous with the assignment and assumption of these leases, the Port and TGR recorded a memorandum of lease, which memorialized the terms of the lease assignment between them. Shortly before the memorandum of lease was executed, the Port issued a Lessor Estoppel Certificate certifying that it was only aware of two issues that could put TGR in breach of its assumed lease obligations.[1] The Lessor Estoppel Certificate states "Lessor acknowledges that TGR will be relying on the accuracy of this certificate in connection with its assumption of certain rights and obligations of the Lessee under the Leases." On December 19,

_____

[1] The Port and TGR also executed an Environmental Indemnity Agreement on July 20, 1995.

1995, the Port and TGR entered into a second amendment to the lease. On August 8, 2000, the Port acknowledged that Bollinger and TGR were negotiating an assignment of the leases and the Port entered into a third amendment to lease with TGR. The third amendment acknowledged that TGR merged with Halter Marine, and that Halter and Bollinger were planning to execute an assignment of Halter's lease with the Port to Bollinger. The third amendment to the lease states: "the Board acknowledges BGR as a third party beneficiary under this agreement."[2][3]

On August 8, 2000, Halter and Bollinger entered into an assignment and assumption of leases, which assigned the tract I and tract II leases, as supplemented and amended, from Halter to Bollinger, which "transfer[ed] and assign[ed]. . . all of the rights, benefits and privileges" under those leases, from Halter to Bollinger. On December 5, 2005, and January 26, 2006, respectively, the Port and Bollinger entered into a first amendment, and then a second amendment to the lease agreement.

In April of 2001, Bollinger discovered the presence of asbestos on the Port's property, and notified the Port of the same. Later that year, Bollinger discovered sunken barges in the slips and notified the port of its discovery.

**PROCEDURAL HISTORY**

On April 23, 2002, the Port filed a petition for damages against Pilko & Associates, Best Wall, and Georgia Pacific Corporation, alleging that "prior to 1995" asbestos was used on the property as landfill, and Pilko was hired to conduct

---

[2] The "Board" is the Board of Commissioners of the Port of New Orleans.
[3] "BGR" is Bollinger Gulf Repair, L.L.C..

3

an environmental study on the property but failed to detect the contamination (CDC No. 2002-6068). On April 15, 2011, the Port filed a petition for damages, naming Bollinger and others, alleging that the sunken barges and asbestos contamination on the leased property violated the 1962 and 1964 leases, and that Bollinger, as an assignee of the rights and obligations of the original lessee, was liable for the violations (CDC No. 2011-4077). The aforementioned cases, CDC No. 2002-6068 and CDC No. 2011-4077, were consolidated.

On November 28, 2016, Bollinger filed a motion for summary judgment. The district court granted said motion and dismissed the case with prejudice.[4] Thereafter, the Port filed a motion for new trial, which the district court denied. An order granting a motion for devolutive appeal was entered on May 17, 2019 and the instant appeal follows.

**DISCUSSION**

In the instant case, the Port raises two assignments of error. The first is that summary judgment was granted in error because the record below establishes that genuine issues of material fact exist, and judgment is not proper as a matter of law for the following reasons: a) as a matter of law, detrimental reliance/estoppel does not apply because Bollinger is not a party to the Lessor Estoppel Certificate and could not justifiably rely on the Certificate; and b) the ruling failed to properly apply the governing law of Louisiana contract interpretation. The second assignment, although not addressed by the District Court, is if summary judgment

---

[4] The district court issued a corrected final judgment of dismissal with prejudice on May 7, 2019.

4

was based upon Civil Code Articles 2696 and 2697, this was legal error because the damages at issue were caused by the lessees, and under those Articles and the leases, those damages are the responsibility of the lessees instead of the Board.

"Appellate courts review summary judgment *de novo* under the same criteria governing the trial court's consideration of whether summary judgment is appropriate." *R.J. Messinger, Inc. v. Rosenblum*, 2003-2209, p. 5 (La.App. 4 Cir. 5/11/05), 904 So.2d 760, 764. Summary judgment is favored and shall be construed "to secure the just, speedy, and inexpensive determination of every action." La. C.C.P. art. 966(A)(2). "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and mover is entitled to summary judgment as a matter of law." La. C.C.P. art. 966 (A)(3).

La. C.C.P. art. 966(D)(1) states:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

In the instant case, the Port, as the plaintiff, bore the burden to oppose Bollinger's motion for summary judgment with specific facts showing that there was a genuine issue for trial on its claim that Bollinger is legally liable to the Port as its lessee. Bollinger supported its motion for summary judgment with the

5

documents related to the leases that would have been presented at trial, and the Port did not contest the authenticity of the documents or raise any basis for parole evidence to be introduced to dispute the language in the assignment of the lease or the Lessor Estoppel Certificate. The Port "fail[ed] to produce factual support sufficient to establish that it will be able to satisfy [its] evidentiary burden of proof at trial [so] there is no genuine issue of material fact." *Yokum v. Van Calsem*, 2007-0676, p. 8 (La.App. 4 Cir. 3/26/08), 981 So.2d 725, 731.

The failure of the non-moving party to produce evidence that supports a material factual dispute mandates the granting of a motion for summary judgment. *Wright v. La. Power & Light,* 2006-0181, p. 16 (La. 3/9/07), 951 So.2d 1058, 1070 quoting *Babin v. Winn-Dixie Louisiana, Inc.*, 2000-0078 (La. 6/30/00), 764 So.2d 37, 40. As the plaintiff in the instant case, the Port was saddled with the burden of presenting sufficient factual evidence to prove each essential element of its claim that Bollinger was responsible for damages due to pre-existing conditions of the property, which were warranted not to exist. However, the Port failed to meet this burden.

In its opposition to Bollinger's motion for summary judgment, the Port relied on a legal argument based on La. R.S. 9:2800 and argued that the warranty for "fitness of use" found in Civil Code Article 2697 did not apply to the lease between the Port and Bollinger, because the Port is a "public entity" shielded by La. R.S. 9:2800. This argument was rejected by the district court because the

6

scope and purpose of La. R.S. 9:2800 is to limit liabilities arising *ex delicto*[5], whereas Bollinger's entitlement to rely on the Louisiana Civil Code warranties and duties of a lessor, and the Lessor Estoppel Certificate, are *ex contractu*[6].

The only allegation the Port seems to be making against Bollinger is that Bollinger, as the lessee in a long line of lessees, and not the Port, should ameliorate the conditions that Bollinger discovered, which were caused by the activities of earlier lessees that date back to the asbestos manufacturer who occupied the property in the 1940's. The Port's alleged damages from any failure to detect the contamination were incurred long before Bollinger assumed the leases. Therefore, the Port is judicially estopped from taking a contradictory position to now make a claim against Bollinger. *See Broussard v. Broussard,* 275 So.2d 410, 412 (La.App. 3 Cir. 1973). Additionally, the Port also made contradictory judicial admissions in the allegations it made against Pilko, in this same lawsuit, before it ever brought Bollinger into the suit. As such, it is clear that the uncontroverted evidence supported the district court's granting of Bollinger's motion for summary judgment.

After the district court granted summary judgment, the Port sought a new trial based on the Environmental Indemnity Agreement (EIA), which was executed the same date as the Lessor Estoppel Certificate. The Port claimed that this indemnity agreement either modified or limited the Lessor Estoppel Certificate, but the EIA was not incorporated or mentioned in the Lessor Estoppel Certificate, nor

---

[5] Arising from a crime or tort.
[6] Arising from a contract.

was it mentioned in the assignment and assumption agreement executed by Bollinger. The Port claimed that this over two decades-old document was new evidence that warranted a new trial.

The standard of review for a district court's denial of a motion for new trial is whether the trial judge abused his or her broad discretion. *Jackson v. Bally's Louisiana Inc.*, 2009-1574, p. 4 (La.App. 4 Cir. 4/7/10), 36 So.3d 1001, 1003-1004. A trial judge has broad discretion in granting or denying a motion for new trial. *Id.*

"A party seeking a new trial on the basis of newly discovered evidence must demonstrate that 'it has done all that is reasonable to lead to timely discovery of the evidence.'" *Show & Tell of New Orleans, L.L.C. v. Fellowship Missionary Baptist Church*, 2015-0067, p. 19 (La.App. 4 Cir. 6/24/15), 171 So.3d 1136, 1146 (quoting *McGhee v. Wallace Drennan, Inc.*, 2004-0950, p. 10 (La.App. 4 Cir. 4/20/05), 904 So.2d 3, 9); *See also Barker v. Rust Engineering Co.*, 428 So.2d 391 (La. 1983). Newly discovered evidence under La. C.C.P. art. 1972(2) justifies a new trial only if the "new" evidence: "(1) is discovered after trial; (2) could not, with due diligence, have been discovered before or during the trial; and (3) is not merely cumulative, but instead would tend to change the result of the case." *The Grill Holdings, L.L.C. v. Camelia Grill Holdings, Inc.*, 2012-1642, p. 5 (La.App. 4 Cir. 5/8/13), 120 So.3d 294, 298.

In the instant case, there exists no newly discovered evidence, only a twenty-five year old document, of which the Port had knowledge.  Accordingly, the district court's denial of the Port's new trial motion was well within its discretion.

**CONCLUSION**

For the above and foregoing reasons, we affirm the district court's granting of summary judgment in favor of the Bollinger defendants and the dismissal with prejudice of the Port's lawsuit.  Likewise, we affirm the district court's denial of the Port's motion for new trial.

**AFFIRMED**